Arie KENNARD, Jr., Appellant,

v.

STATE of Texas, State.

No. 2-81-343-CR.

Court of Appeals of Texas, Fort Worth.

March 30, 1983.

Rehearing Denied April 27, 1983.

Discretionary Review Refused July 20, 1983.

Allan K. Butcher, J. Don Carter, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and Michael Jergins, Asst. Dist. Atty., Fort Worth, for State.

Before FENDER, C.J., and BURDOCK and HUGHES, JJ.

## OPINION

FENDER, Chief Justice.

Appellant, Arie Kennard, Jr., was convicted by a jury of engaging in organized criminal activity as prescribed in V.T.C.A. Penal Code, sec. 71.02, and with being a repeat felony offender. The jury set punishment at ninety-nine years in the Texas Department of Corrections.

We affirm.

Kennard raises twenty-six grounds of error in attacking his conviction and these will be set out as they are addressed in this opinion. As Kennard challenges the sufficiency of the evidence, a short rendition of the facts is in order.

The indictment charged that Kennard, acting with the intent to form a combination, conspired to commit the offense of delivery of a controlled substance, to-wit: heroin. The members of the conspiracy were alleged to be Kennard, Orrin Waits, Andrea Waites, Jeanette Clark, and Leon Thomas Johnson, Jr. The indictment alleged that these five persons agreed to engage in the conduct of actually delivering heroin at the house located at 1515 Avenue D, Fort Worth, Texas.

On December 16, 1980, a Fort Worth Police Department patrol officer reported observing what appeared to be narcotics traffic from the house at 1515 Avenue D, in Fort Worth. That same day narcotics officers placed the house under surveillance. The house was observed to have metal burglar bars over its windows and doors; the doors were further covered by a plastic screen which had a hole cut in it. During a

forty-five minute period, officers observed sixteen people approach the house, stand at the door one and one-half to two minutes and leave. These facts led the officers to believe the house was actually a center for drug traffic.

Officer DeLaFlor went to the house on January 10, 1981, for the purpose of making an undercover "buy". DeLaFlor went to the side door where he was met by and purchased narcotics from Orrin Waits. The transaction took place through the hole that had been cut in the plastic door shield. The evidence obtained by this purchase tested out to be cocaine and heroin. That evidence was destroyed before trial. On January 15, 1981, Officer Cooper made an undercover buy from Orrin Waits. The evidence obtained from that transaction tested to be heroin.

On January 20, 1981 several Fort Worth narcotics agents in conjunction with two agents from the Drug Enforcement Agency (Chism and Brown) set up an operation to obtain further evidence of the drug traffic at 1515 Avenue D. Officers Swearingen and Cooper kept the house under surveillance; Officers DeLaFlor, Wyatt and Sergeant Whitfield were stationed away from the house. Agents Chism and Brown, supplied by DeLaFlor with money, went to the house, purchased narcotics and turned them over to DeLaFlor. Pursuant to the plan, Agent Chism went to the house and purchased narcotics from Leon Thomas Johnson, Jr. Chism took the evidence obtained from the purchase to DeLaFlor, who submitted it to the crime lab. That evidence was proved to be heroin. Forty-five minutes after Chism's buy, Agent Brown met with DeLaFlor, was given cash and proceeded to the house where he purchased narcotics from Johnson. The evidence was given to DeLaFlor. The evidence obtained from Brown's buy tested to be heroin.

The police repeated the "buys" on January 21, 1981 and January 22, 1981. The evidence obtained contained controlled substances.

On January 31, 1981, officers saw Kennard conducting a transaction at the house.

Evidence was presented that Kennard rented the house from September 4, 1980 until February 6, 1981. The house's water, electric, and telephone service were all billed in Kennard's name.

Sherry Marie Lilly bought narcotics from the people at the house on a daily basis for six months. Lilly bought narcotics from appellant, Leon Thomas Johnson, Jr., Jeanette Clark, Orrin Waits, Andrea Waites and appellant's wife. On one occasion Johnson had sold her three bad pills and when she returned them, Kennard mentioned to her the possibility of going to work for him.

Leon Thomas Johnson, Jr., testified on behalf of the State. Johnson testified he worked for the defendant from August, 1980 until January, 1981. Johnson first saw drugs at the house three days after Kennard moved in, and then saw them everyday afterwards. Johnson remodeled the house by building a hidden compartment under the sink, to hide drugs in, and gun racks hidden in the closet. According to Johnson the house operated on three shifts with Jeanette Clark selling narcotics 7:00 a.m. to 2:00 p.m., Andrea Waites selling from 2:00 to 10:00 p.m. and Orrin Waits selling from 10:00 p.m. to 7:00 a.m. Kennard was at the house on a daily basis, with money.

Johnson testified he sold drugs four or five times, when the others were busy and would ask him to handle the door. Johnson saw as much as $9,000 counted out from the proceeds of one morning shift. Kennard brought in the pills of narcotics and divided them out into containers. Johnson testified he was paid in cash taken from the money paid for narcotics.

Kennard was arrested pursuant to a post-indictment warrant, on March 31, 1981. Officers approached Kennard as he was going down the stairs in an apartment complex, and he was told to go to the top of the stairs and sit down. After he sat down, officers observed him attempting to hide something between the slats of the stairway landing. He was told to hand over what he was hiding and he produced an aspirin box that contained four capsules.

One of the capsules contained heroin and the other three contained cocaine.

Kennard raised the defenses of entrapment and mistake of fact at his trial. He claimed that Officer C.W. Goodwin induced him to become a drug dealer in order to infiltrate larger organizations and obtain information from them. In this regard, Kennard testified that he and his wife were arrested by Ft. Worth narcotics officers at a motel in Fort Worth on August 27, 1980—one week after he was released from prison. During the trip to jail, the officers (including Officer Goodwin) and he discussed the possibility of his becoming an informant. Kennard testified that in return for his agreement, he was released from jail, his wife's bond was reduced from $20,000.00 to $5,000.00, and the officers gave back around $1200.00 seized from his wife on arrest. Kennard testified that he told Officer Goodwin that he was buying heroin for resale, when he bought it, from whom he bought it, and how much he paid for it.

Officer Goodwin testified that he had discussed the possibility of Kennard's becoming an informant and that Kennard had kept in contact with him. He also testified that Kennard always provided old information, that he never used Kennard for a controlled undercover buy, and that he never gave Kennard permission to sell or be involved in the sale of narcotics. Officer Thetford, Goodwin's partner, testified that Kennard was specifically told that any involvement with narcotics would have to occur in a situation controlled by the police.

Kennard's first ground of error asserts that the trial court erred in failing to instruct the jury on the law of mistake of fact. The record shows that Kennard both objected to the failure to give an instruction on the defense of mistake of fact raised by the evidence and requested an instruction on mistake of fact in his requested jury charge.

■ It is well settled that when a defensive theory is raised by the evidence from any source and a charge is properly requested, it must be submitted to the jury. It is then the jury's duty, under proper instruc-

tions, to determine whether the evidence is credible and supports the defense. *Horne v. State*, 607 S.W.2d 556 (Tex.Cr.App.1980).

Kennard's objection and requested instruction on the defensive theory of mistake of fact are based on his contention that the evidence raised the issue of his belief that officers of the Fort Worth Police knew and approved of his selling narcotics.

Mistake of fact is defined in V.T.C.A. Penal Code, sec. 8.02:

(a) It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

(b) Although an actor's mistake of fact may constitute a defense to the offense charged, he may nevertheless be convicted of any lesser included offense of which he would be guilty if the fact were as he believed.

■ It is obvious from the above definition that the mistake of fact defense is based solely on the mistaken belief of the actor. It looks to the conduct of others only to the extent that such conduct contributes to the actor's mistaken belief and does not look at all to the belief or state of mind of any other person. *Montgomery v. State*, 588 S.W.2d 950 (Tex.Cr.App.1979); *Lasker v. State*, 573 S.W.2d 539 (Tex.Cr.App.1978).

■ The mistaken belief of the actor, however, must be of a kind that negates the kind of culpability required for the commission of the offense. Kennard was charged with:

Then and there intentionally and knowingly, with the intent to establish, maintain, and participate in a combination, and in the profits of a combination, conspire to commit the offense of unlawful delivery of a controlled substance, to-wit: Heroin, with Orrin Waits, Leon Thomas Johnson, Jr., Andrea Brachelle Waites, and Jeanette Clark, said conspiracy commencing on or about the 17th day of December, 1980, and continuing until on or about the 31st day of January 1981,

and the said Arie Kennard, Jr., Orrin Waits, Leon Thomas Johnson, Jr., Andrea Brachelle Waites and Jeanette Clark did then and there agree among themselves, and with each other, to engage in conduct that would constitute said offense, to-wit: to intentionally and knowingly deliver to persons unknown to the grand jury a controlled substance, namely heroin, by actually transferring said controlled substance, at the house located at 1515 Avenue D, City of Fort Worth, Tarrant County, Texas, and in pursuance of said agreement, and in furtherance thereof, the said Arie Kennard, Jr., Orrin Waits, Leon Thomas Johnson, Jr., Andrea Brachelle Waites and Jeanette Clark did perform overt acts as follows, to-wit: ....

Culpability and the culpable mental states required under the above charge are defined generally in V.T.C.A. Penal Code, sec. 6.03, as follows:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

▮ A belief by Kennard that he had an "understanding" with the Fort Worth Police does nothing to negate either Kennard's intent to commit or knowledge of the crime of conspiracy and the delivery of controlled substances from the house at 1515 Avenue D. Kennard knew he was participating and intended to participate in the acts charged.

*Montgomery v. State, supra,* relied on by Kennard, is distinguishable from the instant case because the actor's alleged mistaken belief *did* negate the culpable mental state required for the commission of the offense charged. In *Montgomery* the defendant claimed that he was approached by one Louis Caney, who purported to be a police narcotics officer, and who wanted Montgomery to be a police informant. At some later time Caney supposedly arranged for Montgomery to meet a W.E. Anderson, whom Montgomery was told was a drug dealer. Montgomery was supposedly instructed to set up a drug deal for Anderson so that Caney could make a case against Anderson for that offense and then use Anderson to make cases against another drug dealer. Montgomery had arranged the drug deal in such a manner that Anderson would not deal directly with the drug supplier, who would only agree to deal with Montgomery. Anderson was to pay the purchase money "up front", Montgomery would then take the money and purchase the drugs from the supplier and give them to Anderson. Caney specifically warned Montgomery that "under no circumstances was he to let the purchase money get away." *Montgomery v. State, supra* at 952.

According to Montgomery, the transaction did not proceed as planned because Anderson would not give the money to him (Montgomery) "up front." Montgomery testified that in response to Caney's warning not to let the money get away he produced a gun and took the money from Anderson, but that he did not do so in order to steal the money, but only so he could carry through with the drug deal as planned, i.e., by taking the money to the drug supplier himself and then returning with the drugs for Anderson. As it turned out, Caney was *not* a police officer, whereas Anderson was an officer working undercover narcotics. Montgomery was arrested and convicted for aggravated robbery. At his trial the jury was charged on entrapment and duress, but Montgomery's requested charge on mistake of fact was not given. The Court of Criminal Appeals reversed, holding that on the above record the issue of mistake of fact was also raised.

In *Montgomery* the mistaken beliefs do actually go to negate the culpable mental state required for aggravated robbery. Specifically, they negate an "intent to steal

(deprive)," which is a culpable mental state included within the definition of aggravated robbery. First, Montgomery raised an issue of mistake regarding his belief that Caney was in fact a police officer. Before he could rely on his claim that he was arranging the deal at police request, he had to be able to take advantage of his purported belief that Caney was an officer. Once he did this, he could claim that he was simply being responsive to Caney's warning not to let the money get away, and that he therefore took the money from Anderson only to see that the deal was completed in the pre-arranged manner, and not to steal the money. As the Court of Criminal Appeals said: "Appellant intended to complete the deal and took the money *with the intent* to go out the front door to buy the marihuana and bring it back to Anderson ... [h]e told Anderson it was not a 'rip off' and that they were going to do the deal his way." *Montgomery v. State, supra* at 952. (Emphasis added).

If the jury believed Montgomery's claim that he was not going to run off with the money, but only going to exchange it for the marihuana pursuant to the original plan, then they could have found that the accused did not intend to deprive Anderson of the property; i.e., that he had no intent to steal. *See* V.T.C.A. Penal Code, sec. 31.01(3), and 31.03(a). If Montgomery had no intent to steal, then he could not have been "in the course of committing theft" when he took the money from Anderson. Since one must be acting "in the course of committing theft" in order to commit robbery and aggravated robbery, Montgomery would not have been guilty of aggravated robbery, the crime charged. Montgomery's innocence would be shown because *at the outset* he lacked the requisite culpable mental state—the intent to steal which is a mental state included within the definition of robbery. Thus the mistake in Montgomery's case was a "mistake of fact" within the legal meaning of that phrase. It tended to negate the culpable mental state required for the offense charged, and of course it was error to omit a requested instruction on that issue.

In the case at bar, however, there was no testimony raising any "mistake of fact" that would negate the culpable mental state required for the offense of engaging in organized criminal activity. The evidence was undisputed that appellant *intended* to engage in the conduct which was the basis of the charge. To the extent anything in the nature of a "mistake" was raised by Kennard, it was only a mistake in the ordinary sense of the word and not in its legal sense under sec. 8.02(a) of the Penal Code. Kennard has incorrectly analyzed his defense and attached an incorrect label to his theory in an attempt to wedge it into an inappropriate statutory provision. As will be demonstrated, Kennard's claimed mistake *could* have raised the defense of "public duty" provided for by sec. 9.21 of the Penal Code, however no charge was requested on that theory.

Kennard's claim of police authorization is not something that negates the culpable mental state of the crime charged. The gist of the asserted defense is, "yes, I did it, but, I thought I was justified in my conduct." This is a defense of justification under chapter 9 of V.T.C.A. Penal Code, and does nothing to affect culpability under chapter 6. Specifically, the defense raised would fit under section 9.21:

(a) Except as qualified by Subsections (b) and (c) of this section, conduct is justified if the actor reasonably believes the conduct is required or authorized by law, by the judgment or order of a competent court or other governmental tribunal, or in the execution of legal process.

(b) the other sections of this chapter control when force is used against a person to protect persons (Subchapter C),[1] to protect property (Subchapter D),[2] for law enforcement (Subchapter E),[3] or by virtue of a special relationship (Subchapter F).[4]

(c) the use of deadly force is not justified under this section unless the actor reasonably believes the deadly force is specifically required by statute or unless it occurs in the lawful conduct of war. If deadly force is so justified, there is no duty to retreat before using it.

(d) The justification afforded by this section is available if the actor reasonably believes:

(1) the court or governmental tribunal has jurisdiction or the process is lawful, even though the court or governmental tribunal lacks jurisdiction or the process is unlawful; or

(2) his conduct is required or authorized to assist a public servant in the performance of his official duty, even though the servant exceeds his lawful authority.

---

[1] Section 9.31 et seq.
[2] Section 9.41 et seq.
[3] Section 9.51 et seq.
[4] Section 9.61 et seq.

■ It thus appears that Kennard erroneously labeled as a mistake of fact under Penal Code, sec. 8.02, what was in actuality a "reasonable belief" that his conduct was authorized under Penal Code, sec. 9.21(d)(2). Kennard did not object to the omission of an instruction on this defense and did not request one. Therefore, he has failed to preserve error and cannot complain on appeal of the omission of an instruction on the defense of "public duty". *Welch v. State,* 576 S.W.2d 638 (Tex.Cr.App.1979). Kennard's first ground of error is overruled.

In his second ground of error, Kennard contends that the trial court erred by failing to apply the law to the facts when charging on the issue of entrapment.

The charge given by the trial court on the issue of entrapment is as follows:

You are further instructed that it is a defense to prosecution that a person engaged in the conduct charged against him because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense; however, conduct of law enforcement agents that merely affords a person an opportunity to commit an offense does not constitute entrapment.

By the term "law enforcement agent" as used herein is meant personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents.

Therefore, even if you believe from the evidence beyond a reasonable doubt that the Defendant committed the offense as alleged, but you further believe, or you have a reasonable doubt thereof, that he was induced to do so by C.W. Goodwin, a law enforcement officer, by persuasion or any other means likely to cause persons to do so, and that the conduct of C.W. Goodwin did not merely afford the Defendant an opportunity to commit the offense, if any, you will find the Defendant not guilty.

The charge proposed by Kennard uses the same first two paragraphs, but changes the final paragraph in this manner:

Therefore, even if you believe from the evidence beyond a reasonable doubt that the Defendant committed the offense as alleged, but you further believe, or you have a reasonable doubt thereof, that he was induced to do so by C.W. Goodwin, a law enforcement agent, by persuasion or any other means likely to cause persons to commit the offense charged, because C.W. Goodwin promised assistance or consideration with regard to the prosecution of the said Arie Kennard, Jr. and/or Goldie Baker Kennard for offenses arising out of their arrest at the Western Motel 6 on or about August 27, 1980, and that the conduct of C.W. Goodwin did not merely afford the said Arie Kennard, Jr. an opportunity to commit the offense, if any, you will find the said Arie Kennard, Jr. Not Guilty which instruction would apply the law to the facts of the case.

Kennard's complaint is that the charge given does not adequately inform the jury of the law as it applies to the facts of this case. He contends that the charge given merely gives the jury abstract instruction on the law and asks them to render a verdict according to a general conclusion on whether the law has been violated. He wants to put the specific facts alleged which give rise to the defense into the jury charge.

■ A jury charge that wholly fails to apply the law to the facts raised by the

evidence constitutes fundamental error. *Williams v. State,* 547 S.W.2d 18 (Tex.Cr. App.1977). That is not, however, the case here. We hold that the charge given properly applied the law to the facts when instructing the jury on the issue of entrapment and is essentially the same charge given and approved of by the Court of Criminal Appeals in *Rangel v. State,* 585 S.W.2d 695 (Tex.Cr.App.1979).

*Beggs v. State,* 597 S.W.2d 375 (Tex.Cr. App.1980), relied on by Kennard, is not in point as the charge there wholly failed to apply the law to the facts. In the instant case, the charge informed the jury what facts when applied to the law of entrapment were required for an acquittal. It also specifically brought the conduct of Officer C.W. Goodwin to the attention of the jury on the entrapment issue. If the jury had believed Kennard's story and found the requisite facts, it was instructed to acquit. Merely because the charge did not define the facts in as much detail as Kennard wanted is not reversible error. Ground of error two is overruled.

Kennard's third ground of error complains of the introduction into evidence of an aspirin box and its contents seized from him at the time of his arrest. The aspirin box contained four capsules—three containing cocaine and one containing heroin. Kennard asserts that the aspirin box and its contents were not relevant to any issue in the instant case and were harmful and prejudicial as tending to show an extraneous offense.

Kennard was arrested on March 31, 1981 and the indictment in this case charges Kennard with criminal activity during the period of December 17, 1980 through January 31, 1981. Thus the arrest of Kennard and seizure of the aspirin box was two full months following the criminal activity charged in the indictment.

The test for the admissibility of any evidence is whether the probative value of that evidence outweighs its inflammatory aspects. An accused individual is entitled to be tried for the accusations made in the State's pleadings and not for a collateral crime or for being a criminal generally. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr. App.1972). However, it has been consistently held that the State is entitled to prove the circumstances surrounding the arrest except where the evidence is inherently prejudicial and has no relevance to any issue in the case. A decision as to the admissibility of such evidence lies within the discretion of the trial judge, and his decision will not be reversed unless a clear abuse is shown. *Hernandez v. State,* 484 S.W.2d 754 (Tex.Cr.App.1972).

At first blush, it appears that the aspirin box seized upon Kennard's arrest would have no relevance to the crime charged—a conspiracy alleged to have occurred two months before. However, evidence of an extraneous offense is admissible to refute a defensive theory raised by the accused. *Albrecht, supra.*

Kennard's defense rested heavily on the theory of entrapment. When entrapment is interposed as a defense to a primary offense involving narcotics, extraneous offenses involving narcotics are admissible on the issue of intent. *Elam v. State,* 518 S.W.2d 367 (Tex.Cr.App.1975). Kennard contended that officers of the Fort Worth Police Department induced him to become involved in drug traffic. His possession of the capsules and actions in trying to hide them in the face of impending arrest are relevant to the issue of whether he entered the drug business of his own volition or not.

The fact that the capsules were admitted prior to Kennard's testimony raising entrapment is harmless. It is well settled that when an issue to which an extraneous offense is relevant, is not raised until after the extraneous offense is admitted, any error in the premature admission is harmless. *Rubio v. State,* 607 S.W.2d 498, 502 (Tex.Cr.App.1980). Ground of error three is overruled.

Grounds of error four, five and six attack the sufficiency of the evidence on the grounds that the State failed to prove that

Leon Thomas Johnson, Jr., was a member of the combination, that he was a conspirator, and that the five alleged conspirators did agree among themselves, and with each other, to engage in conduct that would constitute the offense as alleged in the indictment.

Regarding the membership of Johnson in the conspiracy and the combination, Kennard relies heavily on Johnson's answers to cross examination questions in which he denies that he worked at the house to sell drugs. Kennard asserts that the State is bound by the testimony of the State's witness when that testimony is left uncontroverted and unimpeached by the prosecution.

█ The applicable rule, however, is that the State is bound by its witness's exculpatory statements only when it takes the initiative and introduces confessions or admissions of the *accused* out of court. *Smith v. State,* 491 S.W.2d 924, 927 (Tex.Cr. App.1973). Arie Kennard is the accused in this case and not Johnson.

█ When viewed in the light most favorable to the jury's verdict, we hold that the evidence is sufficient to support a conclusion that Johnson was a conspirator and a member of the combination. It is not necessary to prove a specific agreement to sell heroin. Such agreement can be shown by evidence of the acts and conduct of the involved parties. *Farrington v. State,* 489 S.W.2d 607 (Tex.Cr.App.1972); V.T.C.A. Penal Code, sec. 71.01(b).

Johnson was hired by Kennard to work at the house at 1515 Avenue D, and with the understanding that Johnson would do whatever he was told. Johnson modified the house by putting up the burglar bars and building a place to hide guns and narcotics. Those modifications were obviously made in order to facilitate the use of the house as a place from which narcotics could be sold. Johnson was paid two hundred dollars a week by Kennard, the money taken from the cash received in the drug sales. Johnson also admitted to selling narcotics out of the house, on occasions when someone else was at the house but was unable to answer the door and make the sale. Johnson sold drugs to undercover narcotics officers twice. The fact that Johnson participated in the sale of narcotics should be sufficient to show he was a conspirator and a member of the combination. Johnson sold the narcotics in order to help out the others, who were working for Kennard. Johnson was working with the others when he sold narcotics and that is sufficient to show membership in the conspiracy and combination. *Morgan v. State,* 519 S.W.2d 449 (Tex.Cr. App.1975). The modifications Johnson made facilitated the use of the house to sell drugs, he actually sold drugs out of the house and he was paid out of the profits made from drug sales. The evidence sufficiently shows that Johnson agreed to deliver heroin, conspired to commit the delivery offense, and actively participated in the combination and its profits.

The fact that Johnson at one time contacted the Drug Enforcement Administration does not change this result. There is no evidence in this record that Johnson's acts were on behalf of the government or any of its agents or that he was acting pursuant to any instructions from any governmental agent. His conduct was unlawful and constituted criminal activity in pursuance of the conspiracy and combination of which he was a member.

█ Regarding Kennard's assertion that there is insufficient proof of the agreement among the five conspirators, direct evidence is seldom obtainable to prove a conspiracy hatched in secrecy. This is why evidence of the acts and conduct of the conspirators, as well as circumstances surrounding these acts and conduct, can be used to show the existence of a positive agreement. *Farrington v. State, supra; Roberts v. State,* 375 S.W.2d 303 (Tex.Cr.App.1964).

█ The record shows that each member of the conspiracy sold drugs from the house at 1515 Avenue D. The narcotics were always sold in capsule form and always for twenty dollars a capsule. Six of the seven sales were conducted in the same manner; the money was placed through the opening in the plastic door cover, the seller

went somewhere in the house and returned with the capsules which were passed through the opening in the plastic door cover. The first sale was different in that it appears that Orrin Waits did not have to get the capsules from somewhere in the house. The drug house ran on a set schedule of shifts, with each person having an assigned shift. The five individuals were obviously acting in concert with each other and therefore the obvious conclusion was that they had all agreed with each other. Similar methods of operations (here they were identical) along with joint activities and relationships support the finding of a single conspiracy. *United States v. Ochoa,* 609 F.2d 198 (5th Cir.1980); *See Brown v. State,* 576 S.W.2d 36, 43 (Tex.Cr.App.1979). Each of the five knew that the house was used as a base to sell narcotics and in fact sold narcotics from the house. That evidence is sufficient to show the five agreed among themselves and with each other to deliver heroin. Kennard's fourth, fifth and sixth grounds of error are overruled.

Kennard's seventh ground of error asserts that the trial court erred in denying his challenge for cause of a prospective juror and his eighth ground of error complains of the trial court's refusal to grant another peremptory challenge to replace the one he was forced to use on the overruled challenge for cause.

V.A.C.C.P. art. 35.16(a)(8) requires that a prospective juror be dismissed for cause if "[h]e has a bias or prejudice in favor of or against the defendant." The ruling on challenges for cause is a function of the trial judge. When bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that a prospective juror is disqualified and should be excused. *Anderson v. State,* 633 S.W.2d 851 (Tex.Cr.App. 1982). However, when a prospective juror is shown to be biased as a matter of law, he *must* be excused when challenged, even if he states he can set bias aside and provide a fair trial. *Williams v. State,* 565 S.W.2d 63 (Tex.Cr.App.1978). Therefore, we can only overturn the ruling of the trial judge if, in the light of all the answers given by a prospective juror, bias as a matter of law has been established. *Anderson v. State, supra.*

Viewing the testimony of the challenged juror as a whole, we hold that bias as a matter of law has not been established by this record. Kennard relies on *Hernandez v. State,* 563 S.W.2d 947 (Tex.Cr.App.1978), and contends that the challenged juror has revealed a predisposition to believe police officers over other witnesses. The challenged juror in *Hernandez* said unequivocally that she didn't believe that a police officer would tell a falsehood from the witness stand under any circumstances. That, however, is not the situation we have here. Venireman Smith, the challenged juror, when questioned about the credibility of police officers, said that he would "put them above somebody else. I think, you know, they are supposed to put forth some sort of example, more than anybody else." He also agreed that he would need some evidence that a police officer was lying.

This is a far cry from a belief that a police officer would not lie from the witness stand under any circumstances. This juror may also require that he would need some evidence that *any* witness was lying from the witness stand. "Some evidence" might be either inconsistency with other witnesses, lack of recall, or internal inconsistencies in the officer's testimony—the same things that would call the truth and veracity of any witness into question. Kennard's seventh ground of error is overruled.

The denial of Kennard's challenge for cause being proper, it was not an abuse of discretion to deny Kennard an additional peremptory challenge. *Von Byrd v. State,* 569 S.W.2d 883 (Tex.Cr.App.1978) *cert. denied,* 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073 (1979). Kennard's eighth ground of error is overruled.

Kennard asserts in his ninth ground of error that the trial court erred in failing to instruct the jurors that the witness, Sherry Marie Lilly, was an accomplice witness as a matter of law rather than presenting the question to them as a matter of fact.

Kennard testified in his own defense and raised the defense of entrapment. He admitted that drugs were sold from the house, that he leased the house and hired people to work there, that he was "operating" the house, and that he bought narcotics to be resold at the house. Since entrapment was raised and Kennard testified to facts constituting the offense, he was not entitled to any charge regarding accomplice testimony. *Saunders v. State,* 572 S.W.2d 944 (Tex.Cr.App.1978); *Prudhomme v. State,* 495 S.W.2d 941 (Tex.Cr.App.1973).

Furthermore, the law is settled that one is not an accomplice witness who cannot be prosecuted for the offense with which the accused is charged. *Villarreal v. State,* 576 S.W.2d 51 (Tex.Cr.App.1978). The record shows that Sherry Lilly bought drugs from the combination and not that she was a member of it or shared in the profits. The only evidence relative to any agreement on her part shows that the subject was raised but no agreement was reached. Even if there is some doubt whether Sherry Lilly is an accomplice, submitting the issue to the jury is sufficient even if the evidence preponderates in favor of a conclusion that the witness is an accomplice as a matter of law. *May v. State,* 618 S.W.2d 333 (Tex.Cr.App.1981). Kennard's ninth ground of error is overruled.

Ground of error ten asserts error in that the court's jury charge deleted an element of the offense charged in the indictment by substituting the conjunction "or" in place of the conjunction "and" in the phrase "in pursuance of said agreement, *and* in furtherance thereof . . .". Kennard asserts that by replacing the "and" with the disjunctive "or", the court allowed the jury to convict solely on the theory that the overt acts charged were "in pursuance of said agreement" instead of both "in pursuance and in furtherance of said agreement."

We hold that these two phrases are identical from a statutory perspective. The State is allowed to plead words different from the statute's language which convey the same meaning. V.A.C.C.P. art. 21.17.

The statute in question requires an overt act "in pursuance of the agreement" to show that the conspiracy is past the "meeting of the minds" and is in the operative stage. V.T.C.A. Penal Code, sec. 71.01(b); *McCann v. State,* 606 S.W.2d 897 (Tex.Cr. App.1980). Whether the act is in pursuance of or in furtherance of the conspiracy, it is clear that a finding of such an act would meet the statutory requisite and show the existence of the conspiracy. A requirement that both or either be found does not change the burden of proof in the least. Ground of error ten is overruled.

Ground of error eleven asserts that the trial court erred in failing to grant Kennard's motion to quash the indictment because it failed to allege the "manner and means" by which the five members of the combination reached agreement.

We note initially that Kennard's motion to quash raised several grounds to quash the indictment but at no point did it specifically raise the ground of insufficient notice regarding the "manner and means" by which the charged agreement was reached. The motion failed to direct the trial court's attention to the defect now argued on appeal. *Green v. State,* 533 S.W.2d 769 (Tex. Cr.App.1976); *Rovinsky v. State,* 605 S.W.2d 578 (Tex.Cr.App.1980).

When an objection is not properly raised on a motion to quash, only fundamental error requires reversal. In alleging a conspiratorial agreement, the allegation that the parties agreed to a specific act is sufficient to allege the agreement element of the offense—in this case, the delivery of heroin. *Dade v. State,* 622 S.W.2d 580 (Tex.Cr.App.1981).

Even if a failure to allege the "manner and means" of agreement was raised by the motion to quash, it would not be error to deny the motion because allegations of "manner and means" are evidentiary and not required for notice of the alleged agreement. The statute upon which the indictment is based does not require proof of the "manner and means" of the agreement.

An indictment that tracks the language of the appropriate statute is legally sufficient except in rare cases. *Phillips v. State,* 597 S.W.2d 929 (Tex.Cr.App.1980). The indictment must include everything required to be proven and must be certain enough for the accused to use a judgment on it as a plea in bar for further prosecution for the same offense. V.A.C.C.P. art. 21.03 and art. 21.04. The terms "agree" and "agreement" are taken from the statute tracked by the indictment. V.T.C.A. Penal Code, sec. 71.01(b). There could only be one agreement constituting the charged offense and a judgment would be a plea in bar to further prosecutions on it. The "manner and means" of the agreement is evidence of the agreement and not the agreement itself. Evidentiary information need not be alleged in the indictment. *Phillips v. State, supra,* at 935.

*Lindsay v. State,* 588 S.W.2d 570 (Tex.Cr.App.1979) relied on by Kennard, is not on point. In that case, the defect in the indictment went to its failure to allege "conduct constituting the felony". It failed "to apprise her of what her role was to have been or her specific involvement in the offense of the murder for remuneration to which she agreed with others to commit." *Lindsay, supra,* at 572. In other words, the indictment in *Lindsay* failed to allege the conduct agreed to by the appellant. Kennard's complaint is not that the indictment failed to allege the conduct agreed to by him (the delivery of heroin), but rather that the indictment failed to allege *how* the agreement was reached. Ground of error eleven is overruled.

Grounds of error twelve and thirteen assert that the failure of the indictment to allege that he acted in a continuing course of conduct resulted in an indictment that should have been quashed after Kennard's timely motion to quash because it failed to allege an element of the offense and failed to give sufficient notice of the crime alleged.

Kennard was charged under V.T.C.A. Penal Code, sec. 71.02. Nowhere in that statute is there a requirement that there be a "continuing course of conduct". "Continuing course of conduct" is not an element of the offense charged and an allegation to that effect is not required in an indictment for that offense.

The "continuing course of conduct" language appears at V.T.C.A. Penal Code, sec. 71.03(4) as follows.

"It is no defense to prosecution under sec. 71.03 of this code that:

. . . (4) once the initial combination of five or more persons is formed there is a change in the number or identity of persons in the combination as long as two or more persons remain in the combination and are involved in a continuing course of conduct constituting an offense under this chapter."

The provisions found in sec. 71.03 are determinative of the defenses available under sec. 71.02. The purpose of the section is to *exclude* certain defenses. It does not create new elements of the offense created and defined by sec. 71.02.

A similar statutory scheme can be found in V.T.C.A. Penal Code, sec. 38.03 dealing with resisting arrest or search. Sec. 38.03(b) provides that it is no defense to the crime that the arrest or search obstructed was unlawful. That provision is not an element of the offense of resisting arrest or search created by sec. 38.03(a). *Jones v. State,* 606 S.W.2d 856 (Tex.Cr.App.1980). The language, "it is no defense", should be applied the same way under the instant statutory scheme. Grounds of error twelve and thirteen are overruled.

Ground of error fourteen asserts that the indictment failed to give Kennard sufficient notice of the overt acts upon which the State would rely for conviction. Ground of error fifteen asserts that the indictment failed to allege any overt acts that were substantial enough to show that Kennard was in fact acting in pursuance of the agreement.

The indictment states as follows:

And in pursuance of said agreement, and in furtherance thereof, the said Arie Kennard, Jr., Orrin Waits, Leon Thomas

Johnson, Jr., Andrea Brachelle Waites, and Jeanette Clark did perform overt acts as follows, to-wit:

. . . .

(2) On or about January 6, 1981, Arie Kennard, Jr., and Jeanette Clark were present at the house located at 1515 Avenue D, City of Fort Worth, Tarrant County, Texas; and

. . . .

(7) On or about January 21, 1981, Jeanette Clark and Arie Kennard, Jr. were present at the house located at 1515 Avenue D, City of Fort Worth, Tarrant County, Texas; and

. . . .

(12) On or about January 31, 1981, Arie Kennard, Jr., was present at the house located at 1515 Avenue D, City of Fort Worth, Tarrant County, Texas;

Kennard's written motion to quash was denied by the trial court.

Three independent overt acts of Arie Kennard, Jr., were alleged in the indictment. Those acts were alleged to have been performed in pursuance of the conspiracy to deliver heroin, the purpose of the combination. The overt acts alleged were sufficient to demonstrate that the underlying conspiracy was in operation and this is all that the statute requires.

 Kennard contends that no criminal act was charged as an overt act. The law is clear, however, that an overt act in pursuance of criminal conspiracy need not itself be a criminal act. *McCann v. State, supra.* The purpose in requiring the overt act is to show that the conspiracy is in existence. Criminal liability is based on the criminal purpose of the agreement and not on any criminality in the overt act.

 *Lindsay v. State, supra,* again relied on by Kennard, is again not on point. Kennard's complaint here is not that the indictment failed to allege the conduct agreed to by him, as was the fault in *Lindsay.* That conduct was specifically alleged; to wit, the agreement to deliver heroin. Kennard's complaint here is rather that the overt acts alleged do not specifically apprise

him of that conduct. As stated above, that is not the purpose of the requirement for the allegation of overt acts. The allegation of the agreement to deliver heroin is sufficient to apprise Kennard of the conduct for which he faces criminal liability. The overt acts were alleged to show that the agreement to sell drugs was an operative agreement that had gone beyond the meeting of the minds. Kennard's presence with a co-conspirator at the house where drugs were sold, pursuant to the conspiracy, and during the period of time when the conspiracy was in existence, does sufficiently show this. Grounds of error fourteen and fifteen are overruled.

 Grounds of error sixteen through nineteen assert error in the trial court's instructions to the jury in the court's charge. Ground of error sixteen complains of the definition of "controlled substance"; seventeen complains of the definition of the term "delivery"; eighteen asserts a failure to require a finding that the agreement preceded the overt acts; and nineteen asserts a failure to require a finding that the offense occurred prior to the indictment. Kennard asserts that the above errors, considered as a whole, show that the charge given was calculated to injure his rights and deny him a fair trial.

We do not agree. We find that this charge properly instructed the jury on the applicable law and required them to find each and every element of the offense in order to convict.

Kennard's complaints about the definitions given to the jury are not well taken. It makes little difference that "controlled substance" was defined as "subject to control by law in the Texas Controlled Substance Act" and not narrowed further by the addition of "listed in Schedules I through V and Penalty Groups 1 through 4 of this Act". This is especially true here because the charge, in applying the law to the facts, specifically limited the jury's consideration to heroin. The jury could not have convicted Kennard for conspiracy to deliver any other substance.

Similarly, the complaint that the charge omits the requirement of corroboration in proof of an offer to sell from the definition of "delivery" ignores the whole intent of this charge. The State alleged an agreement to deliver heroin by actually transferring it. An offer to sell was never a part of the offense charged and all the evidence at trial was of delivery by actual transfer. There was no evidence of a mere offer to sell. As an offer to sell was neither pled nor proven, it was not necessary to include in the charge the requirement of corroboration for that form of delivery. The form of delivery pled and proven, actual transfer, was adequately covered by the definition.

■ Kennard's complaints regarding the sequence of the agreement, the overt acts, and the indictment also ignore the manifest meaning of the charge as a whole. The charge required the jury to find that the conspirators "in pursuance of said agreement, in furtherance thereof, ... did perform overt acts as follows ...". Furthermore, the charge requires "the offense and overt acts involved therein, if any, to have been committed at any time *prior* to presentment of the indictment ...". The jury could not convict without finding that the overt acts were in pursuance of the agreement and that both occurred prior to the presentment of the indictment. The agreement, overt acts, and indictment must all be in proper sequence under this charge to obtain a conviction. Grounds of error sixteen, seventeen, eighteen, and nineteen are overruled.

Grounds of error twenty through twenty-five are based on the trial court's overruling of a pre-trial motion for discovery. In this motion, Kennard asked for information of when, where, and in what manner each person became a member of the conspiracy, where the illegal agreement was made, the names and addresses of all co-conspirators known to the State, the time of day, date, and place where conduct constituting the offense occurred, the time of day, date, and place where the overt acts in pursuance of the agreement occurred, and any overt acts in pursuance of the conspiracy not pled in the indictment but which the State intended to prove at trial.

Discovery in criminal proceedings is defined and controlled by V.A.C.C.P. art. 39.14. That statute provides that upon written motion showing good cause the trial court may order the production of:

[A]ny designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects, or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies.... V.A.C.C.P. art. 39.14.

■ It is clear under the above statute that what is discoverable is within the discretion of the trial court. *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). In order to show an abuse of discretion in refusing to permit discovery of evidence, it must be shown that the evidence sought was material to the defense. *Quinones, supra,* at 940. Under this statute, Kennard must show good cause, materiality, and that the evidence requested is in possession of the State.

■ In the instant case, Kennard's requests were not for documents, objects, and other tangible things but were instead for *information* about the State's case. Requests for information are not within the scope of discovery in criminal cases in Texas as defined by V.A.C.C.P. art. 39.14. Kennard cites no Texas cases to the contrary. Instead, Kennard cites Federal District Court cases in which federal trial judges are exercising their discretion in interpreting federal discovery practice. This is not persuasive authority to show an abuse of discretion by a Texas trial judge under Texas criminal discovery practice.

■ Furthermore, Kennard has not demonstrated good cause, materiality, or

possession by the State of any of the information requested. The State was not required to prove when, where, and in what manner each conspirator became a member of the combination and where the agreement was made as the agreement could be and was proven by the acts of the parties. V.T.C.A. Penal Code, sec. 71.01(b). The indictment contained sufficient information as to the time of day, date, and place of the conduct constituting the offense and the overt acts. Also, Kennard has not shown that any of the above requested information was in possession of the State. The request for unpled overt acts is even beyond the scope of federal discovery practice. *United States v. Carroll,* 510 F.2d 507 (2nd Cir.1975), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2633, 49 L.Ed.2d 378 (1976). Grounds of error twenty, twenty-one, twenty-two, twenty-three, twenty-four, and twenty-five are overruled.

Lastly, Kennard contends by his twenty-sixth ground of error that there is a fatal variance between the indictment's allegation of delivery to "persons unknown to the grand jury" and proof at trial. Specifically, he asserts witnesses for the State that testified before the grand jury knew persons who bought drugs at the house on 1515 Avenue D and that the indictment alleges specific deliveries of controlled substances to named persons.

The indictment alleges that the five individuals named in the indictment, including Kennard, agreed:

"[T]o engage in conduct that would constitute said offense, to-wit: to intentionally and knowingly deliver to persons unknown to the Grand Jury a controlled substance, namely heroin ..."

The offense charged in the indictment is the *agreement* to deliver heroin and not the deliveries themselves. Kennard testified that the agreement's purpose was to sell to Melvin Roberts' customers, "specifically his customers and nobody else's." There is nothing in this record to show that the grand jurors knew, or with due diligence could find out, who Melvin Roberts' customers were or that deliveries were to

be restricted to these persons. There is nothing in this record to show that the grand jurors knew, or with due diligence could find out, the persons to whom the combination agreed to deliver. The fact that the grand jurors might have known to whom some deliveries *were* made is immaterial to the agreement.

The cases of *McIver v. State,* 555 S.W.2d 755 (Tex.Cr.App.1977); *Jordan v. State,* 520 S.W.2d 388 (Tex.Cr.App.1975); *Payne v. State,* 487 S.W.2d 71 (Tex.Cr.App.1972), cited by Kennard, are not on point because they deal with situations analogous to an offense of delivery and not an agreement to deliver. Kennard's twenty-sixth ground of error is overruled.

The judgment is affirmed.