Stein v. State 






AFFIRMED
MARCH 8, 1990
        
NO. 10-88-210-CR
Trial Court
# 88-093-CR
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

JOHNNY STEIN,
   Appellant
v.

THE STATE OF TEXAS,
   Appellee

* * * * * * * * * * * * *

 From 87th Judicial District Court
Freestone County, Texas

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
A jury convicted Appellant of the following separate offenses
which resulted from one criminal episode: possession of less than
twenty-eight grams of cocaine; possession of less than twenty-eight
grams of amphetamine; and conspiracy to manufacture 400 grams or
more of amphetamine. See TEX. HEALTH & SAFETY CODE ANN. § 481.112
(Vernon 1990); TEX. PENAL CODE ANN. § 15.02 (Vernon 1974). The
jury assessed punishment at ten years in prison for possession of
cocaine, eight years in prison for possession of amphetamine, and
thirty-five years in prison for conspiracy to manufacture
amphetamine. The court then sentenced Appellant to thirty-five
years in prison, to eight years in prison, which would run
consecutively with the thirty-five-year sentence, and to ten years'
probation beginning upon his discharge from prison. Appellant
initially appealed all three convictions, but two of the appeals
have been dismissed. The only conviction on appeal is for
conspiracy to manufacture amphetamine.
Appellant's court-appointed counsel filed a brief asserting
three points of error. Subsequently, Appellant retained new
counsel, who was granted permission to file a supplemental brief. 
The supplemental brief contains seven points which will be referred
to as points four through ten. Three points relate to the
sufficiency of the evidence. Appellant also complains that the
court erred when it: (1) allowed the prosecutor to introduce
evidence obtained in an illegal search and seizure; (2) overruled
his objection to prosecutorial argument at the punishment stage;
(3) permitted the prosecutor to impeach him with his post-arrest
silence; (4) overruled his objection that a police officer's
testimony was improper opinion testimony; (5) allowed the
prosecutor to cross-examine him about an extraneous offense; and
(6) ordered that the eight-year sentence run consecutively with the
thirty-five-year sentence. Finally, he asserts that he received
ineffective assistance of counsel at the trial. The judgment will
be affirmed.
To be guilty of conspiracy, a defendant must intend that a
felony be committed, agree with one or more persons to engage in
conduct that would constitute an offense, and one of the
conspirators must perform an overt act in pursuance of the
agreement. TEX. PENAL CODE ANN. § 15.02(a) (Vernon 1974). 
Agreement of the parties may be inferred from their actions. Id.
at 15.02(b). Furthermore, the overt act performed in furtherance
of the agreement need not be criminal in nature. Kennard v. State,
649 S.W.2d 752, 767 (Tex. App.--Fort Worth 1983, pet. ref'd).
In points one and two, Appellant argues that the court erred
when it denied his motion for an instructed verdict because the
State failed to meet its burden of proof and because there was a
fatal variance between the indictment and proof at trial. Point
four is that the evidence was insufficient to support his
conviction. 
The standard on appeal is whether, viewing the evidence in the
light most favorable to the conviction, a rational trier of fact
could have found the essential elements of the crime beyond a
reasonable doubt. Humason v. State, 728 S.W.2d 363, 366 (Tex.
Crim. App. 1987). When reviewing circumstantial evidence, the
question is whether the evidence excludes every other reasonable
hypothesis except the defendant's guilt. Id.
Officer Price found phenylacetic acid, ether, acetic acid,
formic acid, hydrochloric acid, formamide, hydrogen chloride,
flasks, stoppers, beakers, syringes, a hemostat, a vacuum pump,
hand-rolled "cigarettes," and "zig-zag papers" in Appellant's van. 
According to Price, the chemicals and glassware found in the van
are used to manufacture amphetamine or methamphetamine. He also
found cocaine and amphetamine on Appellant, and amphetamine and a
syringe on Johnny Stephens, the passenger in the van.
Phillip Sandel, the sales manager at Scientific Chemical in
Humble, sold chemicals to Appellant "quite a few" times between
October 1987 and August 1988. Appellant always paid with cash, and
often listed his reason for obtaining the chemicals as "personal." 
Dr. Deborah Reagan, a chemist with the Department of Public Safety,
testified that Appellant had no legitimate purpose for possessing
the "quantities and combinations" of chemicals and equipment found
in his van. She said that the "recipe" for amphetamine could be
found at most public libraries.
Officer Coy told the jury that Appellant lived in Fritch,
approximately 600 miles from Humble. Based on his training and
experience, Coy stated that people commonly drive a long distance
from their home to obtain chemicals used in the manufacture of
amphetamine. Appellant admitted that he had "a pretty good idea"
about how the chemicals and equipment were used.
The jury could have based its decision upon the following
facts: Appellant and Stephens had traveled 600 miles to purchase
the chemicals and glassware; they had amphetamine in their
possession; Appellant had made the same trip and purchased similar
items "quite a few" times; the chemicals found in the van were
those used to manufacture amphetamine; and Appellant had no
legitimate reason for possessing the quantity of chemicals and
equipment found in the van. 
Viewing the evidence in the light most favorable to the
verdict, a rational trier of fact could have found from their
actions an agreement between Appellant and Stephens to commit the
felony offense of manufacturing amphetamine. Furthermore, the
evidence was sufficient for a rational trier of fact to have found
that Appellant and Stephens transported the chemicals, the overt
act charged in the indictment, in furtherance of their conspiracy. 
The evidence was sufficient to exclude all reasonable hypotheses
except Appellant's guilt. Points one, two and four are overruled.
On May 24, 1988, Officer Price stopped a 1985 Dodge van
because neither the driver nor the passenger were secured by safety
belts. He approached the vehicle and instructed Appellant, who had
been driving, to get out of the van. Appellant and Price then
proceeded to a location between their two vehicles. Price
explained the reason the van had been stopped, and told Appellant
he would be issued a citation for failing to wear a seat belt. 
Next, the officer approached the passenger side of the van to
inform the passenger, Johnny Stephens, that he was also in
violation of the law. 
While Price was talking to Stephens through the open window of
the van, he detected what his experience led him to believe was the
smell of "burnt marijuana." He asked Stephens to get out of the
van, informed Appellant of his suspicion, and asked for permission
to search the vehicle. After obtaining Appellant's consent, Price
opened the sliding door of the van. As he stuck his head into the
van, he "smelled the smell of phenylacetic acid . . . real strong
in the back part of the van," and noticed a blue tarp lying in the
back of the vehicle. When he asked Appellant what was under the
tarp, Appellant replied, "Just some stuff." 
Price went to the back of the van, pulled back the tarp, and
found boxes of chemicals and glassware. He then arrested Appellant
and Stephens because, based on his training and experience, he
believed they were engaged in the manufacture of amphetamines or
methamphetamines. The van was transported to the police station
where it was searched. The State introduced the items recovered
from the van into evidence at Appellant's trial over his objections
that they were seized in a warrantless and illegal search. 
Appellant's third point is that the court erred when allowed the
items obtained from the illegal search of the van to be introduced
into evidence.
Generally, warrantless searches are per se unreasonable under
the Fourth Amendment. Katz v. United States, 389 U.S. 347, 88
S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). However, warrantless
searches of an automobile may be upheld in some circumstances where
a warrantless search of a house or office would not be justified. 
Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 1981, 26 L.Ed.2d
419 (1970). For a warrantless search of an automobile to be valid,
there must be probable cause to search the vehicle, and exigent
circumstances must exist which make obtaining a warrant
impracticable. Gauldin v. State, 683 S.W.2d 411, 414 (Tex. Crim.
App. 1984). Furthermore, probable cause for a warrantless search
of an automobile exists when the facts and circumstances which are
within the officer's knowledge and of which he has trustworthy
information would lead a man of reasonable caution and prudence to
believe that he will discover the instrumentality of a crime or
evidence pertaining to a crime. Delgado v. State, 718 S.W.2d 718,
722 (Tex. Crim. App. 1986). If a car may be searched where it is
stopped, it may also be seized and taken to the station for the
warrantless search. Chambers, 90 S.Ct. at 1981. 
Price initially smelled "burnt marijuana" emanating from the
van, and once he obtained Appellant's consent to search the vehicle
and stuck his head into the van, he smelled phenylacetic acid, a
chemical associated with the manufacture of amphetamine and
methamphetamine. This constituted probable cause to search the
vehicle. Because the van could be searched where it was stopped,
the subsequent search at the police station was also proper. See
id. Therefore, the search of the van was not illegal, and the
evidence obtained as a result of the search were properly admitted
into evidence at Appellant's trial. See Moulden v. State, 576
S.W.2d 817, 819 (Tex. Crim. App. 1978); Pike v. State, 752 S.W.2d
737, 739 (Tex. App.--Waco 1988, pet. ref'd). The third point is
overruled.
During the punishment phase, Appellant's wife testified about
the number and ages of their children, and Appellant requested
probation. In point five, he complains that the following portion
of the prosecutor's argument asked the jury to speculate on
improper issues:
Let me go over this a little bit with you. The guy's not
eighteen years old, no job, trying to keep his family from
starving. We know he's got a family. He very effectively had
his wife on the stand telling you all about his kids which had
nothing to do with this case.
[Appellant's counsel] doesn't want to appeal to your
emotions. But that's exactly what his punishment-phase
evidence attempted to do.
You know, if that were the case then maybe we want to
talk about probation or something along that line. The 
man--they paid income after taxes and after deductions on
fifteen thousand dollars last year. You know, I would assume
one would not pay tax on drug money, but only on legitimate
income.
[APPELLANT'S COUNSEL]: That's outside the record, your
Honor.
THE COURT: I beg your pardon?
[APPELLANT'S COUNSEL]: That's outside the record. He's
arguing about facts that are not in evidence.
THE COURT: Mr. [prosecutor]?
[PROSECUTOR]: Your Honor, I think it's a reasonable
deduction from the evidence that someone would not declare
money derived from elicit manufacture of amphetamine on their
income tax return.
[APPELLANT'S COUNSEL]: No evidence of that whatsoever
one way or the other.
THE COURT: Very well. I will overrule your objection,
noting your exception to the court's ruling.
[PROSECUTOR]: In any event, whether he did or didn't, we
know his family wasn't starving. He come into here--[his
attorney] can't argue the poor man did it--I would probably do
almost anything, maybe including this, if I had my two
children starving to death and that was the only thing I could
do. I had no other way to do it. That's not the point. 
That's not where we are here. You know, he was making it. He
wasn't rich. But he was making it. I suspect maybe some
people on this jury may not be making it as well as he was. 
So we don't have that.
You know, that's not a reason to get him down here in the
low range. It's not a reason to give him in a low range
because this is the first time he's ever done something like
this. You know, we know that's not the case. Not the first
time he's been in drugs.
Proper jury argument falls within one of the following
categories: (1) a summary of the evidence; (2) a reasonable
deduction from the evidence; (3) an answer to an opponent's
argument; or (4) a plea for law enforcement. Alejandro v. State,
493 S.W.2d 230, 231 (Tex. Crim. App. 1973). The state has wide
latitude in argument, and error does not result unless the argument
is extreme, manifestly improper, or injects new and harmful facts. 
Denison v. State, 651 S.W.2d 754, 762 (Tex. Crim. App. 1983).
The prosecutor's argument was a plea for law enforcement and
an answer to Appellant's request for probation. Although he did
mention not paying taxes on drug money, the prosecutor admitted he
did not know whether Appellant had done that. Even if the argument
were improper, because Appellant had been previously convicted of
possession of amphetamine, had cocaine and amphetamine in his
possession at the time of his arrest, and had transported large
quantities of chemicals on numerous occasions, when placed in its
complete context it was not extreme or manifestly improper. Point
five is overruled.
Appellant's sixth point is that the court erred when it
allowed the prosecutor to use his post-arrest silence to impeach
his testimony. His complaint is about the following exchange:
Q. You did not mention Sandel's--or did you mention Sandel's
involvement in this to anybody prior to your testifying at
this time?
A. I don't understand the question. Did I involve Phil?
Q. You are testifying at this time that Phil Sandel is the
main culprit in this basically: Is that what you are telling
me?
A. No. I didn't say Phil was the main culprit.
Q. Or one of the culprits.
A. If he is a culprit he would be up here doing this just
like me, wouldn't he?
Q. Are we hearing about this for the first time today now?
[APPELLANT'S COUNSEL]: I object to the form of the
question. I don't know who "we" is. I am sure the jury is
hearing it all for the first time. I am not hearing it for
the first time. [The prosecutor] may be. But he doesn't get
to talk to the witness.
THE COURT: What is your law objection, sir?
[APPELLANT'S COUNSEL]: That he's being argumentative
rather than asking a question. He's not seeking to illicit
facts, your Honor.
THE COURT: Overruled.
Q. Is there anybody in authority, that being the district
attorney's office and any police agency in Freestone County,
Texas, that's heard about Mr. Sandel's involvement in this
before today?
[APPELLANT'S COUNSEL]: I object because the defendant
had no duty to discuss this matter with anybody in law
enforcement after the charges were filed, your Honor.
THE COURT: Overruled your objection.
Appellant's objection at trial does not comport with his point
on appeal. An objection raised on appeal will not be considered if
it is different from the objection made at trial. Pyles v. State,
755 S.W.2d 98, 116 (Tex. Crim. App. 1988). Appellant's sixth point
is overruled.
Officer Coy stated his opinion that the equipment and
chemicals found in Appellant's van were used to manufacture
amphetamine. In his seventh point, Appellant argues that the court
erred when it admitted Coy's opinion testimony over his objection. 
Rule 702 of the Rules of Criminal Evidence, which governs the
admissibility of expert testimony, provides: "If scientific,
technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a
witness qualified as an expert by knowledge, skill, experience,
training, or education, may testify thereto in the form of an
opinion or otherwise." TEX. R. CRIM. EVID. 702. Furthermore,
opinion testimony which is otherwise admissible is not
objectionable "because it embraces an ultimate issue to be decided
by the trier of fact." Id. at 704. Coy's opinion testimony was,
therefore, proper. However, assuming that the testimony was
improper, any error was cured when Appellant testified that he had
"a pretty good idea" about what the chemicals and equipment were
used for, and that "ya'll done come to the point that the only
thing you can use those chemicals for is amphetamine." See Womble
v. State, 618 S.W.2d 59, 62 (Tex. Crim. App. [Panel Op.] 1981). 
Point seven is overruled.
Appellant's eight point is that the court erred when it
allowed him to be questioned about an alleged extraneous offense. 
The point relates to the following exchange:
Q. When did you first meet Officer Coy?
A. Officer who?
Q. Coy.
A. I never met no Officer Coy.
Q. The guy that testified earlier today.
A. The black-headed guy?
Q. Yeah.
A. I never met him.
Q. He said he had been in your house.
A. Yeah. He's been to my house probably one night when a
raid come down. They all raided my house one night looking
for a lab because they had followed me from a load back or
somehow or another. The whole deal was a mess. But there
wasn't, you know--he never made no, phew, discovery of no lab. 
I never met that man.
Appellant waived any error when he failed to object as soon as
grounds for the objection became apparent. See Thompson v. State,
691 S.W.2d 627, 635 (Tex. Crim. App. 1984). Furthermore, because
Appellant volunteered the information that his house had been
raided, he cannot complain on appeal. See Webb v. State, 760
S.W.2d 263, 269 (Tex. Crim. App. 1988). Point eight is overruled.
In point nine, Appellant asserts that the court erred when it
ordered that his eight-year sentence run consecutively with his
thirty-five-year sentence. He relies on section 3.03 of the Penal
Code, which provides that when an accused is found guilty of more
than one offense arising out of one transaction the sentences for
the offenses run concurrently. See TEX. PENAL CODE ANN. § 3.03.
(Vernon 1974).
Section 3.02 provides that several offenses may be joined in
one trial if the state files a written notice at least thirty days
prior to trial that the offenses arose out of the same episode. 
Id. at § 3.02. However, when the state does not comply with
section 3.02, the prohibition against cumulation of sentences
contained in section 3.03 does not apply. Caughorn v. State, 549
S.W.2d 196, 197 (Tex. Crim. App. 1977). Here, because the State
did not comply with section 3.02, section 3.03 is inapplicable. 
Normally, the trial judge has absolute discretion to cumulate
sentences. Smith v. State, 575 S.W.2d 41 (Tex. Crim. App. [Panel
Op.] 1979). Point nine is overruled because section 3.03 does not
apply, and because the court did not abuse its discretion when it
ordered that the sentences run consecutively.
Finally, Appellant complains in point ten that he was
ineffectively assisted by his trial counsel. A defendant must
prove that his counsel's assistance was ineffective by a
preponderance of the evidence. Cannon v. State, 668 S.W.2d 401,
403 (Tex. Crim. App. 1984). In determining the effectiveness of
counsel, the test is whether, considering the totality of the
circumstances viewed at the time of counsel's conduct, (1) the
assistance was reasonably effective, and (2) if the assistance was
ineffective, whether the defendant was prejudiced thereby. 
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064-65, 80
L.Ed.2d 674 (1984); Miller v. State, 728 S.W.2d 133, 134 (Tex.
App.--Houston [14th Dist.] 1987, pet. ref'd). Furthermore, there
exists a strong presumption that the attorney's conduct falls
within the wide range of reasonable professional assistance. Id.
Appellant was indicted in three cases. His trial counsel
filed a motion for discovery and inspection of evidence in all
three cases. He was active in challenging prospective jurors for
cause, and in making objections throughout the trial. 
Specifically, each time the State attempted to introduce into
evidence an item seized from Appellant's van, he objected that the
item was seized in violation of Appellant's constitutional rights. 

Appellant points to three examples of what he claims was
ineffective assistance: (1) allowing his prior conviction to be
brought before the jury although the court had previously ruled
that it was not final; (2) allowing the prosecutor to make improper
arguments during the punishment phase; and (3) failing to object to
his cross-examination by the State. The State explains that when
Appellant was asked whether he had any final convictions, he
answered "yes." Therefore, the defense strategy became making
Appellant, who answered the question incorrectly and then changed
his mind, a credible witness. Furthermore, a possible trial
strategy could have been to let the prosecutor argue without
unnecessary interruption because constant interruption makes
Appellant look as if he has something to hide.
In light of the record as a whole, Appellant has failed to
meet his burden of proving that his counsel's assistance was not
reasonably effective. See Miller, 728 S.W.2d at 134. The tenth
point is overruled. The judgment is affirmed.



                    
BOB L. THOMAS
 DO NOT PUBLISHChief Justice