**Earnest Edward WELCH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 57300.**

Court of Criminal Appeals of Texas, Panel No. 3.

Feb. 7, 1979.

---

Maurice U. Westerfeld, Houston, for appellant.

Carol S. Vance, Dist. Atty., J. Richard Trevathan and R. P. Cornelius, Asst. Dist. Attys., Houston, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

W. C. DAVIS, Judge.

Appeal is taken from a murder conviction where punishment was enhanced to life imprisonment. Five grounds of error, including sufficiency of the evidence are raised. We affirm.

In presenting its case, the State called ten witnesses, introduced several photographs, two pistols, and numerous other exhibits. This evidence, viewed favorably to the verdict, is sufficient to support appellant's conviction. *Valore v. State*, 545 S.W.2d 477 (Tex.Cr.App.1977).

The record reflects that at approximately 8:30 a. m. on December 8, 1976, Mrs. E. Fugate was driving in the area of the deceased's garage-shop. While in this area, she was passed by a wrecker truck that appeared to have a body suspended from the cable normally used to tow cars. Mrs. Fugate turned and followed the wrecker to where it parked on a dead end street adja-

cent to a bayou. There she observed that there was indeed a human body suspended by a cable from the "A-frame" part of the wrecker. She further testified that appellant was the driver and only person in the area surrounding the wrecker.

Seeking help, Mrs. Fugate drove to a nearby store and informed store employees of the events she had observed. One of the employees, Betty Salvato, accompanied Mrs. Fugate back to the wrecker. Both women observed appellant walking in the area of the wrecker. Ms. Salvato stated appellant was the only person in the area.

The police were notified and arrested appellant, still walking in the area. At the time of his arrest, appellant had in his possession a .38 caliber revolver with a spent cartridge case under the firing pin.

In addition to the testimony of Fugate and Salvato, the State called Virginia Richy, a former girl friend of appellant. She testified as to the existence of a debt owed appellant by deceased and a statement by appellant that he was going to collect the debt "no matter what." She also testified that appellant lived in the garage-shop belonging to deceased.

Several Houston police officers testified, including Sgt. E. A. Silva and Officer D. C. Lohr, who arrested appellant and discovered the pistol in his pocket. Detective Kent and Officer Flowers testified as to collecting evidence and photographing the scenes.[1] Their testimony was to the effect that upon arriving at the wrecker scene they found deceased suspended from the towing cable at the top of the wrecker's "A-frame." After photographing this scene, they went to the garage-shop of deceased and found blood stains, scrape marks, a spent bullet on the floor, and a .25 caliber pistol in a coat lying on the ground in front of the doors. Photographs were also made of the garage-shop.

Dr. Erickson, a pathologist, placed the time of death at between 6:30 and 8:30 a. m. on December 8, 1976. She further stated that death resulted from a gunshot which produced both entrance and exit wounds. These wounds had characteristics similar to other gunshot victims that had been shot with .38 caliber weapons.

A firearms identification expert, Charles Anderson, testified that the bullet found on the floor of the garage-shop was too mutilated for exact comparison to test projectiles fired through the pistol confiscated from appellant. However, Anderson did testify that the bullet was similar in size and composition to other bullets taken from appellant's gun. Further, the bullet displayed characteristics similar to those found on the test bullets.

The case against appellant is a circumstantial one. The State showed both motive and opportunity in presenting its case. Appellant was the only person shown to be near the wrecker by the testimony of Fugate and Salvato. The cause of death was a gunshot wound, apparently inflicted by a .38 caliber weapon. Appellant possessed a .38 caliber weapon when arrested and a firearms expert was able to make several definitive comparisons between a bullet found on the floor of the shop and test projectiles fired from the appellant's gun. This evidence, viewed in the light most favorable to the verdict, excludes all reasonable hypotheses except the guilt of appellant. The evidence is sufficient. Ground of error four is overruled.

In ground of error one, appellant complains of the admission of photographs showing the body of deceased suspended from the cable of the wrecker. Appellant claims that such photographs serve only to inflame the jurors' minds and thus denied him a fair trial.

A photograph is merely a graphic portrayal of oral testimony. Sec. 214, McCormick's Handbook on Evidence. Therefore, if a verbal description of the body and scene is admissible, then a photograph of the scene described is also admissible. *Martin v. State*, 475 S.W.2d 265 (Tex.

---

1. The area where the wrecker parked after being observed by Mrs. Fugate was labeled scene one. The shop of the deceased was labeled scene two.

Cr.App.1972). When particularly gruesome or horrible details are contained in the photograph which might inflame the jurors' emotions, then the trial court in its discretion must determine if the photograph is of sufficient probative value to be admitted. *Martin*, supra.

 Appellant argues that the photographs were inadmissible because they were not relevant to a disputed fact issue. *Cavazos v. State*, 365 S.W.2d 178 (Tex.Cr.App. 1963); *Alcorta v. State*, 294 S.W.2d 112 (Tex.Cr.App.1956). This test for admissibility of photographs was overruled in *Martin*, supra. We follow *Martin* and hold that the photographs of deceased suspended from the towing cable of the wrecker were admissible.

In ground of error two, appellant complains of the admission of the written statement of Mrs. Fugate because all but one sentence of the statement had been blacked out. The record reflects no specific objection to the "blacking out" of all but one sentence of the statement. Without such objection, nothing is presented for review. *Mayberry v. State*, 532 S.W.2d 80 (Tex.Cr.App.1975); *Allen v. State*, 536 S.W.2d 364 (Tex.Cr.App.1976).

Ground of error three contains appellant's complaint that the introduction of Fugate's written statement was an improper attempt by the State to impeach its own witness. We cannot agree.

A witness testifies from present recollection what he remembers presently about the facts in the case. When that present recollection fails, the witness may refresh his memory by reviewing memorandum made when his memory was fresh. After reviewing the memorandum, the witness must testify either his memory is refreshed or his memory is not refreshed. If his memory is refreshed, the witness continues to testify and the memorandum is not received as evidence. However, if the witness states that his memory is not refreshed, but has identified the memorandum and guarantees the correctness, then the memorandum is admitted as past recol-

lection recorded. *Wood v. State*, 511 S.W.2d 37 (Tex.Cr.App.1974).

Mrs. Fugate's memory could not be refreshed by a review of her written statement. She could, however, identify her written statement and vouched for its correctness; therefore, the statement was admissible as Fugate's past recollection. There was no effort by the State to impeach its own witness, merely a proper job of following the rules of evidence. Ground of error three is overruled.

In his final ground of error, appellant complains of the failure of the trial court to instruct the jury that they could consider Mrs. Fugate's written statement for impeachment purposes only. Under our holding today, the statement was not used for impeachment and therefore could be considered for any purpose. *Wood*, supra. Further, appellant failed to request this charge, and thus waived this ground of error. *Mott v. State*, 543 S.W.2d 623 (Tex. Cr.App.1976).

Judgment is affirmed.