

# NUMBER 13-21-00351-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**JAVIER BARRERA GARCIA,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 445th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva
Memorandum Opinion by Chief Justice Contreras**

The State of Texas charged appellant Javier Barrera Garcia with driving while intoxicated (third or more offense), a third-degree felony. *See* TEX. PENAL CODE ANN. § 49.09(b)(2). A jury found Garcia guilty, and the trial court sentenced him to five years' confinement in the Texas Department of Criminal Justice Correctional Institutions

Division, suspended his sentence, and placed him on five years' community supervision. By his sole issue, Garcia argues that the trial court erred by allowing police officer witnesses "to testify exclusively from their respective reports after attempts to refresh each officer's memory failed to provide a present recollection of the event." We affirm.

## I.  BACKGROUND

On January 26, 2007, Garcia was arrested after another driver called 9-1-1 to report his erratic maneuvering. Based upon the January incident, Garcia was indicted for driving while intoxicated in November 2007.[1] On September 27, 2021, Garcia pleaded not guilty, and trial commenced.

Three Brownsville Police Department officers testified for the State at trial: (1) Cristobal Abrego Jr., (2) Mario Garza, and (3) Jose Mendoza. Given the fourteen-year gap between Garcia's 2007 arrest and his 2021 trial, the officers found it necessary to reference their arrest reports during their testimony. Garcia was convicted as set forth above, and this appeal followed.

On appeal, Garcia alleges that the officers testified exclusively from their reports in violation of the rule against hearsay. *See* TEX. R. EVID. 802, 803(5). The State disagrees and argues that the officers' testimony was proper under Rules 612 and 803(5). *See id.* R. 612, 803(5).

---

[1] Following his indictment in November 2007, Garcia entered a plea agreement with the State, which the trial court accepted. In October 2020, Garcia filed a petition for writ of habeas corpus arguing in part that "his plea [in 2007] was not made knowingly or voluntarily" because of his limited understanding of the English language. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072. In November 2020, the trial court granted the writ on that ground, vacated Garcia's plea, conviction, and sentence, and set the case for trial.

## II.    STANDARD OF REVIEW & APPLICABLE LAW

### A.    Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Valadez v. State*, No. PD-0574-19, 2022 WL 946268, at *4 (Tex. Crim. App. Mar. 30, 2022) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "There is no abuse of discretion if the trial court's ruling is within the zone of reasonable disagreement." *Id.* The admission of inadmissible hearsay constitutes non-constitutional error. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). If a trial court errs by admitting evidence "and the error is not constitutional, we apply the harmless error standard of [Texas] Rule [of Appellate Procedure] 44.2(b) where we disregard all errors that did not affect appellant's substantial rights." *Gonzalez v. State*, 510 S.W.3d 10, 28 (Tex. App.—Corpus Christi–Edinburg 2014, pet. ref'd.); *see* Tex. R. App. P. 44.2(b). "A defendant's substantial rights are affected when the error has a substantial and injurious effect or influence on the jury's verdict." *Amberson v. State*, 552 S.W.3d 321, 334 (Tex. App.—Corpus Christi–Edinburg 2018, pet. ref'd).

### B.    Reading from a Report

In general, a witness is required to testify from his "present recollection"; i.e., "what he remembers presently about the facts in the case." *Welch v. State*, 576 S.W.2d 638, 641 (Tex. Crim. App. [Panel Op.] 1979); *Guerra v. State*, 676 S.W.2d 181, 183 (Tex. App.—Corpus Christi–Edinburg 1984, pet. ref'd). When a witness does not immediately recollect certain facts in a case, the witness "may refresh his memory by reviewing [a] memorandum made when his memory was fresh." *Welch*, 576 S.W.2d at 641; *Guerra*,

676 S.W.2d 183; *see* TEX. R. EVID. 612 ("Writing Used to Refresh a Witness's Memory"). "After reviewing the memorandum, the witness must testify either his memory is refreshed or his memory is not refreshed. If his memory is refreshed, the witness continues to testify[,] and the memorandum is not received as evidence." *Welch*, 576 S.W.2d at 641; *Guerra*, 676 S.W.2d 183; *see S & S Wholesale Supply, Inc. v. Los Cedros, Inc.*, 628 S.W.2d 493, 495 (Tex. App.—Corpus Christi–Edinburg 1982, no writ) ("In present recollection refreshed, the witness has some recollection of the event or matter in question and, after being permitted to look at the memorandum, is able to speak from memory."). If the witness's memory is not refreshed, but the witness has identified the memorandum and guarantees its correctness, then the evidence may be admitted as a "past-recollection recorded" under Rule 803(5) of the Texas Rules of Evidence. *Welch*, 576 S.W.2d at 641; *see* TEX. R. EVID. 803(5); *Johnson v. State*, 967 S.W.2d 410, 416 (Tex. Crim. App. 1998).

Hearsay is "a statement, including a written statement, other than one made by the declarant while testifying at the trial, which is offered to prove the truth of the matter asserted." *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (citing TEX. R. EVID. 801(d)). Rule 803(5) excepts from hearsay a "recorded recollection," defined as a record that:

(A)    is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;

(B)    was made or adopted by the witness when the matter was fresh in the witness's memory; and

(C)    accurately reflects the witness's knowledge, unless the circumstances of the record's preparation cast doubt on its

4

trustworthiness.

TEX. R. EVID. 803(5). The proponent seeking admission of a recorded recollection under

Rule 803(5) must lay a proper predicate by meeting four elements:

> (1) the witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum.

*Johnson*, 967 S.W.2d at 416; *see Gomez v. State*, 552 S.W.3d 422, 430 (Tex. App.—Fort

Worth 2018, no pet.). If the proponent satisfies those elements, then the record may be

"read into evidence." TEX. R. EVID. 803(5); *Brown v. State*, 333 S.W.3d 606, 613 (Tex.

App.—Dallas 2009, no pet.); *Godsey v. State*, 989 S.W.2d 482, 496 (Tex. App.—Waco

1999, pet. ref'd). But the record can only be "received as an exhibit" if offered by an

adverse party. TEX. R. EVID. 803(5); *Godsey*, 989 S.W.2d at 496; *see Texaco, Inc. v.

Pennzoil, Co.*, 729 S.W.2d 768, 842 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.)

(suggesting that the rule exists as such because "there [i]s a danger that the jury would

give undue weight or credence to [a] written document if it were admitted as an exhibit").

## III.     DISCUSSION

There is no dispute that the officers' reports were neither read into the record nor

offered by Garcia and admitted as an exhibit as past recollections recorded. *See* TEX. R.

EVID. 803(5). Consequently, given the use of their reports, the officers' testimony would

have only been proper as present recollections. *See id.* R. 612; *Guerra*, 676 S.W.2d at

183. We must, therefore, review the officers' respective testimony to discern if it was

based entirely upon their reports. *See Guerra*, 676 S.W.2d at 183. If so, then the

5

testimony was based entirely on inadmissible hearsay and should have been excluded. *See id.*

## A. Officer Abrego's Testimony

Officer Abrego opened his testimony by stating that: (1) he does not recall the date on which Garcia was arrested; (2) he wrote a report regarding Garcia's arrest that he had a chance to review; (3) he was unable to refresh his memory from his report; and (4) he would be testifying from his report. When the State began questioning Abrego about the details of his report, Garcia objected on the grounds that "[Officer Abrego] does not recall the facts" and "failed to refresh his memory." The trial court denied Garcia's objection, and Garcia requested to take Officer Abrego on voir dire, which the trial court granted. In response to Garcia's questions, Officer Abrego testified that he had no personal recollection of what happened on the night Garcia was arrested and could not identify the defendant in the courtroom. Garcia once again objected to Officer Abrego's testimony, and the trial court overruled the objection.

Officer Abrego testified that he received a report from dispatch at around 2:30 a.m. that a citizen dialed 9-1-1 to report a pickup truck that was driving erratically. He stated that other officers pulled Garcia over and that his only involvement that night was his discussion with the 9-1-1 caller at the scene of the traffic stop. Officer Abrego testified that the caller "identified the truck that was pulled over by the other officers on the scene as the one [the caller] called about." And he noted that he wrote his arrest report on the night of the arrest when the facts were still fresh in his mind.

6

**B.    Officer Garza's Testimony**

The State asked Officer Garza if he recalled the events on the date of Garcia's arrest, to which he responded, "A little bit. It's long ago." Officer Garza testified that he wrote a report concerning the arrest of Garcia and reviewed the report. When asked by the State whether he was able to refresh his memory, Officer Garza responded, "Yes." Nevertheless, when responding to the State's subsequent questions concerning the facts of Garcia's arrest, Officer Garza began almost every answer by stating it was "according to" or "based on" his report. On cross-examination, Garcia asked Officer Garza whether he was testifying based on his report, and Officer Garza answered affirmatively. Garcia asked Officer Garza whether he had any personal knowledge or memory of the events, and he answered, "I don't recall. It's too long." Officer Garza gave a similar answer to Garcia's subsequent questions concerning Officer Garza's actions on the night of the arrest. Garcia never objected to Officer Garza's testimony.

Officer Garza testified that he received a report from dispatch about "a possible intoxicated driver in a white Ford truck." He stated that he spotted the vehicle, "turned around, followed the vehicle into the downtown area[,]" "saw him run a red light[,]" and "stopped the vehicle." When the State asked what happened next, Officer Garza testified that "Officer Mendoza . . . showed up immediately right behind [him]." Officer Garza did not recall whether he got out of his vehicle or "made contact with the driver," and he did not know who the driver of the white truck was. Based on his report, Officer Garza testified that "Officer Mendoza took over and [Officer Garza] resumed [sic] back to . . . [his patrol] area."

7

## C.    Officer Mendoza's Testimony

Officer Mendoza testified that he wrote a report concerning Garcia's arrest on the night of the arrest, when the facts were still fresh in his mind. He testified that he was "notified that there was a caller, a citizen reporting that there was a possible drunk driver driving" and that the alleged intoxicated driver was "driving a white pickup truck." Officer Mendoza located the white pickup truck, which was being followed by Officer Garza. After Officer Garza pulled the white pickup truck over, Officer Mendoza "exited the cruiser to make contact with the driver."

The State asked Officer Mendoza what happened next, and he answered:

> I—apparently—and I'm going to say going back to my report, . . . asked the driver to identify himself. The individual . . . pulled out a wallet; and he started fumbling through his wallet looking for his . . . driver's license. And while I was waiting there, I noticed that I could smell a strong odor of alcoholic beverage emitting from his breath.

Officer Mendoza also noticed that the driver had bloodshot eyes and his speech was slurred. Eventually, the driver provided his driver's license to Officer Mendoza, which identified the driver as Garcia. The State asked Officer Mendoza if he saw Garcia in the courtroom, and Mendoza testified, based on Garcia's driver's license picture in his files, that he "believe[d] it might be the gentleman sitting in that blue shirt next to the lawyer." Garcia objected at this point and asked to take Officer Mendoza on voir dire. Garcia asked Officer Mendoza whether he could, "out of [his] own personal knowledge, identify Mr. Garcia as the same person that [he] arrested" in 2007. Officer Mendoza ultimately responded, "probably not." Based on Officer Mendoza's testimony, Garcia "ask[ed] that [Officer Mendoza's] testimony be stricken as to the identification." The trial court overruled

8

Garcia's objection.

Officer Mendoza testified that he asked Garcia to step out of his truck and then conducted three field sobriety tests. He recalled having to conduct the tests in Spanish. Officer Mendoza first conducted a horizontal gaze nystagmus (HGN) test, whereby he asked Garcia to follow the tip of a pen from left to right, moving only his eyes. He testified, according to his report, that Garcia failed the HGN test. Officer Mendoza then conducted the walk-and-turn test. Officer Mendoza testified that he demonstrated and explained the test to Garcia in Spanish, and that Garcia failed the test. He noted that Garcia could not maintain his balance, so he "stopped the test for [Garcia's] safety." Finally, Officer Mendoza conducted the one-leg stand test, whereby he asked Garcia to stand on one foot for thirty seconds while pointing at his toes. Officer Mendoza testified that Garcia stated he could not perform the test, so "[t]here was no point of continuing."

Officer Mendoza testified that he placed Garcia "under arrest for suspicion of driving under the influence." He gave Garcia *Miranda* warnings when Garcia was processed at the city jail, and interviewed Garcia at about 3:00 a.m. Officer Mendoza noted that Garcia told him that he was on his way home when he was stopped, he last ate about 5:00 p.m., and he had two drinks of Bacardi that evening around 6:00 p.m. Officer Mendoza informed Garcia "that if he refused to take [a] breathalyzer test, . . . his driver's license would . . . be lost for 180 days, whether or not he was convicted." Garcia refused to take the breathalyzer test and signed a form indicating his refusal, which was admitted in evidence at trial as State's Exhibit 2.

On cross-examination, Garcia asked Officer Mendoza whether "without [his]

reports and without [the State's] assistance, [he] could not have possibly been able to recall this case." Officer Mendoza replied, "That's correct, without the narrative, no." Garcia asked Officer Mendoza whether he observed Garcia make any unusual movements while in his truck, and he responded that he did not recall. Garcia asked Officer Mendoza where specifically he conducted the field sobriety tests and whether Garcia stumbled while walking, and Officer Mendoza responded that he did not recall and would have to reference his report.

At the start of his case-in-chief, Garcia made an oral motion for directed verdict on the following grounds: (1) insufficient evidence on the basis that "none of the officers c[ould] personally identify [him] as the person driving [the] vehicle"; and (2) a violation of his *Miranda* rights. The trial court denied Garcia's motion.

**D.     Analysis**

The record reflects that Officer Abrego was unable to refresh his memory and instead testified at trial—over Garcia's objection—based entirely on his report. Further, even if Officer Abrego sufficiently testified as to the veracity of his report, the State did not have him read his report into the record, so his testimony was improper under Rule 803(5). *See* TEX. R. EVID. 803(5); *Brown*, 333 S.W.3d at 613; *Godsey*, 989 S.W.2d at 497 (concluding that the trial court's error was harmless where it allowed a proponent to admit a written statement as an exhibit under Rule 803(5) and that the "statement could have [properly] been read into evidence, but was not"). The record also reflects that Officer Garza testified from his report at trial, but Garcia never objected to Officer's Garza's testimony as improper under Rules 612 or 803(5), so he waived those arguments on

10

appeal. *See* TEX. R. APP. P. 33.1 (noting that to preserve a complaint for appeal, the record must show that the complaint was made to the trial court by a timely request, objection, or motion, and that the trial court ruled on the request, objection, or motion).

As for Officer Mendoza's testimony, in the first place, Garcia never objected on the basis that Officer Mendoza could not recall the facts in this case without referencing his report. Instead, Garcia objected to Officer Mendoza's purported inability to properly identify Garcia in the courtroom and asked the trial court to strike his testimony "as to the identification"—an argument Garcia does not likewise raise on appeal. Garcia thus waived the argument on appeal that Officer Mendoza improperly testified directly from his report. *See* TEX. R. APP. P. 33.1. In any event, the record does not support a conclusion that Officer Mendoza's testimony was based solely on his report. Garcia highlights Officer Mendoza's statement that he would not have been able to recall the facts in this case without referencing his report. But that statement does not rule out the possibility that Officer Mendoza's memory was in fact refreshed by the report, nor does it prove that Officer Mendoza testified exclusively from his report. Moreover, unlike Officers Abrego and Garza, Officer Mendoza did not answer nearly each question at trial by referencing his report or admit that he was testifying from his report. Thus, we cannot conclude that Officer Mendoza testified exclusively from his report, or that the trial court erred by allowing his testimony.

## E.    Harm Analysis

Having found non-constitutional error in the trial court's rulings as to the testimony of Officer Abrego, we must assess whether that error affected Garcia's substantial rights.

11

*See* Tᴇx. R. Aᴘᴘ. P. 44.2(b); *Macedo*, 629 S.W.3d at 240; *Gonzalez*, 510 S.W.3d at 28. Asserting that each officer's testimony was erroneous, Garcia argues that his substantial rights were affected because the State relied entirely on hearsay and could not prove its case without it. Contending that only Officer Abrego's testimony was potentially erroneous, the State argues that Officer Garza's and Officer Mendoza's testimony provided sufficient evidence to convict Garcia, so his substantial rights were not affected. We conclude that Garcia's substantial rights were not violated for the following reasons.

"Substantial rights are not affected by the erroneous admission or exclusion of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Celis v. State*, 354 S.W.3d 7, 38 (Tex. App.—Corpus Christi–Edinburg 2011), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013) (cleaned up); *see Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003). In making that determination, we consider factors such as testimony, overwhelming evidence of guilt, the theories of the State and defense, closing arguments, whether the erroneously admitted evidence was cumulative, whether the evidence was elicited from an expert, and whether the State emphasized the evidence. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Bagheri*, 119 S.W.3d at 763; *Motilla v. State*, 78 S.W.3d 352, 356–57 (Tex. Crim. App. 2002).

Even if Garcia properly objected to the testimony of both Officer Abrego and Officer Garza, who testified from their reports, Officer Mendoza's testimony sufficed to prove the State's case. The bulk of the State's evidence was gleaned through Officer Mendoza's testimony, which spans seventy-six pages of the reporter's record, while Officer Abrego's

and Officer Garza's testimony spans seventeen pages and sixteen pages, respectively. *See Gonzalez*, 544 S.W.3d at 373. Further, the State spent most of its opening and closing statements informing the jury of evidence that would be or was gleaned through Officer Mendoza and did not highlight the testimony of Officers Abrego or Garza. *See id.* The record indicates why: Officer Mendoza was the only officer that interacted with Garcia on the night of his arrest. Officers Abrego and Garza merely testified that they received notice from dispatch of a 9-1-1 call, saw a white truck run a red light, initiated a traffic stop, and saw Officer Mendoza walk up to Garcia's truck. That evidence was cumulative to Officer Mendoza's, who testified that he was notified of a potential intoxicated driver and saw Officer Garza initiate a traffic stop of Garcia's vehicle. *See Bagheri*, 119 S.W.3d at 763. But Officer Mendoza also testified that he: (1) witnessed Garcia fumbling for his wallet; (2) smelled alcohol from Garcia's breath; (3) demonstrated and conducted in Spanish three field sobriety tests, which Garcia failed; (4) transported Garcia to the city jail; (5) took Garcia's statement when Garcia noted that he had two drinks of Bacardi that night; and (6) received Garcia's written refusal to take a breathalyzer test. Given Officer Mendoza's testimony, which we have concluded was proper in this case, we are confident that Officer Abrego's and Officer Garza's testimony "did not influence the jury, or had but a slight effect." *Celis*, 354 S.W.3d at 38; *see Gonzalez*, 544 S.W.3d at 373; *Bagheri*, 119 S.W.3d at 763; *Motilla*, 78 S.W.3d at 356–57. Accordingly, we conclude that the trial court's error in this case did not affect Garcia's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Macedo*, 629 S.W.3d at 240; *Gonzalez*, 510 S.W.3d at 28.

13

## IV. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
1st day of December, 2022.