

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00244-CR

———————————————————

OLIVER WESLEY EVANS JR., Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1734596

---

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Oliver Wesley Evans Jr. was convicted of possession of four to two hundred grams of methamphetamine with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d). In his sole issue on appeal, Evans argues that the trial court should have included a mistake-of-fact instruction in the jury charge. Because the evidence on which Evans relies to support submission of the instruction is not evidence of a mistake of fact that would negate a culpable mental state of the offense, we will affirm.

## Background

A woman working as an informant for Fort Worth police texted Evans to buy methamphetamine from him. Evans took an Uber to a motel that was known to Fort Worth police as a location with "high narcotics activity levels." Evans went inside and returned to the Uber five or six minutes later. Fort Worth police officers then stopped the Uber for a traffic violation. After Evans was arrested for an outstanding traffic warrant, he told the officers that he was a confidential informant (CI) for William Wallace, an officer with the Texas Department of Public Safety. The officers put Evans in the patrol car and then searched the Uber, where they found the drugs.

At the police station, Evans spoke to narcotics detectives. He initially stated that he did not know if drugs had been found in the Uber, but after the detectives told him that they had found "ice," he said that he was "working on a deal . . . on

Flores," that the drugs were for Flores rather than the woman who had texted him, that he was working with Wallace, and that they had "a few leads."

At Evans's trial, Wallace testified that Evans had signed a CI agreement form but had not yet been officially approved to be a CI. Wallace further testified that he had told Evans that if DPS used him as a CI, it would be for information only and that because of Evans's criminal history, he would not be able to do drug buys. Text messages between Wallace and Evans were admitted at trial. The texts showed Wallace asking Evans for information and do not include any request or direction by Wallace that Evans buy drugs, possess them, or deliver them to another person.

When discussing the admissibility of the text messages, Evans's attorney told the trial court that "[w]e're not saying that [Wallace] told him to" do the drug deal but rather that Evans "thought he had the right to do it based on that contract." But the CI agreement stated,

> I understand that there is **NO** information of such value as to require me to use illegal drugs in order to obtain it. I understand that **I AM NOT** authorized to possess or purchase illegal drugs . . . without prior knowledge and specific direction of my control agent.

At the charge conference, Evans's attorney requested a mistake-of-fact instruction. He argued that while Evans had the intent to possess the methamphetamine, he did not have an intent to deliver: "his intent was not to deliver

3

it as a person who was dealing drugs or narcotics. It was . . . his belief that he was acting as a confidential informant for [Wallace]."[1]

The trial court denied Evans's request for a mistake-of-fact instruction as well as his request for an entrapment instruction. The jury found Evans guilty and, finding two allegations in a habitual offender notice to be true, assessed his punishment at thirty years' confinement.

**Mistake-of-Fact Defense and Standard of Review**

A trial court must charge the jury on a defensive theory to the charged offense when properly requested and raised by any evidence, regardless of its substantive character. *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997) (discussing jury charge on voluntariness). Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be *some* harm to the accused from the

---

[1] To preserve charge error, the defendant must object *or* request an instruction in the charge. *Chase v. State*, 448 S.W.3d 6, 12–13 (Tex. Crim. App. 2014); *Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996). Evans objected to the absence of a mistake-of-fact instruction relating to his intent to deliver, and he also submitted a proposed written instruction. However, the proposed instruction that Evans submitted was an instruction related to a mistaken belief regarding ownership of property. The instruction provided that the jury should find him not guilty if it found "that at the time defendant took the property in question he acted under a mistake of fact, that is, a reasonable belief that it was his property, or if you have a reasonable doubt therefore." Although this requested instruction was not applicable to the charged offense, from the substance and context of Evans's attorney's discussion with the trial court, it is clear that the court understood Evans's objection and that Evans wanted an instruction regarding Evans's mistaken belief that he was acting as a CI.

error. Tex. Code Crim. Proc. Ann. art. 36.19; *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see also Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

## Discussion

Texas Penal Code Section 8.02(a) provides that it is a defense to prosecution that the defendant "through mistake formed a reasonable belief about a matter of fact if [the] mistaken belief negated the kind of culpability required for commission of the offense." Tex. Penal Code Ann. § 8.02(a); *Montgomery v. State*, 588 S.W.2d 950, 953 (Tex. Crim. App. 1979). In other words, the mistake-of-fact defense applies when the defendant has a mistaken belief about a fact if the mistaken belief negates the culpable mental state for the offense. *See Celis v. State*, 416 S.W.3d 419, 432 (Tex. Crim. App. 2013) (rejecting, in a plurality opinion, defendant's entitlement to mistake-of-fact instruction when evidence of mistaken belief did not negate culpable mental state); *Kennard v. State*, 649 S.W.2d 752, 758 (Tex. App.—Fort Worth 1983, pet. ref'd).

On appeal, Evans's brief does not discuss what culpable mental state applies in this case or how any trial evidence related to a culpable mental state of the offense. However, in the trial court, after acknowledging that he had an intent to possess the methamphetamine, he objected that the charge should include a mistake-of-fact instruction related to his intent to deliver. *See Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.) (noting intent-to-deliver element of offense). On

5

appeal, the evidence he relies on is (1) his telling officers that he was a CI and (2) his signing the CI agreement and providing Wallace with information.

Neither category of evidence was proof that would negate his intent to deliver the drugs to another person. There is no evidence that Evans, acting in his belief that he was a CI, intended to turn the drugs over to law enforcement rather than deliver them to another person. To the contrary, he told the detectives that he bought the drugs for "Flores." His attorney acknowledged during the charge conference that Evans had intended to possess the drugs, and Evans did not argue that the evidence negated an intent to deliver the drugs to another person. Instead, his argument was that he intended to make that delivery to another person, not "as a person who was dealing drugs or narcotics," but as a CI. However, evidence that he believed that he was a CI is not evidence that negates his intent to deliver or entitles him to a mistake-of-fact defense. *See Kennard*, 649 S.W.2d at 760–61; *see also Whitfield v. State*, No. 07-19-00305-CR, 2020 WL 2610348, at *7 (Tex. App.—Amarillo May 21, 2020, no pet.) (mem. op., not designated for publication) (stating that defendant's mistaken belief that he was legally allowed to possess guns found in his residence "did not negate the culpability required for the offense as he clearly intentionally and knowingly possessed the firearms in question" and "[t]he fact that he mistakenly believed he was permitted to do so [did] not alter or negate that mental state").

This court's opinion in *Kennard* is instructive here. In that case, the defendant was convicted of engaging in organized criminal activity. 649 S.W.2d at 756. The

6

indictment alleged that "acting with the intent to form a combination, [Kennard] conspired to commit the offense of delivery of a controlled substance, to-wit: heroin." *Id.* At trial, he claimed that a Fort Worth police officer had "induced him to become a drug dealer in order to infiltrate larger organizations and obtain information from them" and that he told the officer "that he was buying heroin for resale, when he bought it, from whom he bought it, and how much he paid for it." *Id.* at 758. The officer testified that he had discussed the possibility of Kennard's becoming an informant but that he never used Kennard for a controlled undercover buy and never gave Kennard permission to sell or be involved in the sale of narcotics. *Id.* The trial court denied Kennard's requested mistake-of-fact instruction. *Id.*

On appeal, this court explained that Kennard's belief that he had an understanding with the Fort Worth police "[did] nothing to negate either Kennard's intent to commit or knowledge of the crime of conspiracy and the delivery of controlled substances . . . . Kennard knew he was participating and intended to participate in the acts charged." *Id.* at 759. As we explained, the evidence relied on by Kennard was perhaps relevant to whether he believed that he was authorized to commit the offense but not to his intent to commit the offense:

> . . . [T]here was no testimony raising any "mistake of fact" that would negate the culpable mental state required for the offense of engaging in organized criminal activity. The evidence was undisputed that appellant *intended* to engage in the conduct which was the basis of the charge. To the extent anything in the nature of a "mistake" was raised by Kennard, it was only a mistake in the ordinary sense of the word and not in its legal sense under [Section] 8.02(a) of the Penal Code. Kennard has

7

incorrectly analyzed his defense and attached an incorrect label to his theory in an attempt to wedge it into an inappropriate statutory provision. As will be demonstrated, Kennard's claimed mistake *could* have raised the defense of "public duty" provided for by [Section] 9.21 of the Penal Code, however no charge was requested on that theory.

Kennard's claim of police authorization is not something that negates the culpable mental state of the crime charged. The gist of the asserted defense is, "yes, I did it, but, I thought I was justified in my conduct." This is a defense of justification under [C]hapter 9 of . . . [the] Penal Code, and does nothing to affect culpability under [C]hapter 6[, which addresses culpable mental states]. Specifically, the defense raised would fit under [S]ection 9.21[, which justifies a person's conduct if the person reasonably believes the conduct is required or authorized by law].

. . . .

It thus appears that Kennard erroneously labeled as a mistake of fact under Penal Code, [Section] 8.02, what was in actuality a "reasonable belief" that his conduct was authorized under Penal Code[ Section] 9.21(d)(2).[2] Kennard did not object to the omission of an instruction on this defense and did not request one. Therefore, he has failed to preserve error and cannot complain on appeal of the omission of an instruction on the defense of "public duty[."] *Welch v. State*, 576 S.W.2d 638 (Tex. Cr[im]. App. 1979).

*Id.* at 760–61.

Evans attempts to distinguish *Kennard* by noting that, unlike Kennard, his relationship with Wallace as a CI "was formalized by written agreement," and the record does not reflect that Wallace ever told Evans that he was not officially a CI,

---

[2]Section 9.21(d)(2) provides that "[t]he justification afforded by this section is available if the actor reasonably believes: . . . [that the person's] conduct is required or authorized to assist a public servant in the performance of [the public servant's] official duty, even though the servant exceeds [their] lawful authority." Tex. Penal Code Ann. § 9.21(d)(2).

and thus "Evans had the very real belief that he was working for DPS." But the holding in *Kennard* did not turn on whether the defendant had a formalized agreement; the issue was whether the defendant's belief that he was authorized by a law enforcement officer to engage in the offense negated the offense's culpable mental state. Then, as here, we held that it did not.[3] *Id.*; *cf. Dockstader v. State*, 233 S.W.3d 98, 107 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding that the defendant's belief that his actions were lawful is not a mistake of fact).

If there is other evidence of Evans's mistake of a fact regarding a culpable mental state, Evans has not told us what it is, and we have not found it. Because evidence that Evans believed that he was Wallace's confidential informant did not negate the culpable mental state for the charged offense, we overrule Evans's sole issue.

---

[3]For that matter, we have not found evidence in the record that Evans was or believed that he was authorized to possess a controlled substance and deliver the controlled substance to another person, regardless of whether he was a CI or believed that he was. The CI agreement specifically told Evans that he could not engage in such conduct. We acknowledge that in parts of Evans's interview with the Fort Worth police detectives, the audio is of poor quality, and Evans's speech is quiet and hard to hear or understand. Nevertheless, Evans does not argue that he told the detectives during the interview that Wallace directed or authorized his activities. *See Sears v. State*, No. 08-01-00011-CR, 2002 WL 1732592, at *6 (Tex. App.—El Paso July 25, 2002, no pet.) (not designated for publication) (holding that when appellant admitted that he had not been instructed by anyone to purchase drugs on the day of his arrest, appellant was not reasonably acting under assumption that he was working as an informant when he purchased the drugs).

## Conclusion

Having overruled Evans's sole issue on appeal, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 17, 2025